THE TRAVELERS INDEMNITY COMPANY, Plaintiff, *v.* SERVICE LINES, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, First District, October 5, 1936.

*Moran, Galli & McGlinn* [*John G. Donovan* of counsel], for the plaintiff.

*Samuel Weiss*, for the defendant.

LEWIS (DAVID C.), J.   Upon the application of the defendant, the plaintiff issued its policy of liability insurance covering the defendant's auto bus.   The policy recited that the bus is to be used for the transportation of tenants between certain Bronx apartments and the neighborhood subway station, and further restricted the coverage to such use.

" Item 4. Purpose for which motor vehicles will be used.   Apartment house bus as per end.   1469 Att."   (See declaration in policy, plaintiff's Exhibit 2.)

" It is agreed that the bus described in the declarations of the policy to which this endorsement is attached is to be used for the

transportation of tenants from 1842 Sedgwick Avenue, 1840 Sedgwick Avenue, 1644 Popham Avenue, 1495 Popham Avenue, 149 W. Tremont Avenue, to Jerome Avenue and West 170th Street subway station.

" It is further agreed that this insurance shall not apply while the bus described in the policy is being used for the transportation of any person or persons other than tenants." (See indorsement 1469 attached to plaintiff's Exhibit 2.)

Tenants of premises other than those enumerated (but located in the same proximity) were hurt while riding in the bus between the Jerome avenue and One Hundred and Seventieth street subway station and the apartments specified in the policy.

This defendant did not restrict the use of this bus exclusively to the transportation of the tenants of the designated premises. At the same time that it carried the tenants of the premises designated, it also transported the tenants of other premises located in the same immediate vicinity to and from the same subway station. The plaintiff as the insurer settled with the injured parties.

The plaintiff's responsibility to the injured passengers and the settlements it made with them are not questioned. (See policy, ¶ 9, plaintiff's Exhibit 2.)

The question is did the policy cover the use of the bus for the carriage of tenants other than tenants of the premises specifically mentioned in the indorsement No. 1469.

The plaintiff contends that between the plaintiff and the defendant the coverage was restricted to the transportation of the tenants of the particular premises set forth in the indorsement.

The defendant maintains that the policy only limited the use of the bus to the transportation of tenants as passengers over the indicated route and that it did not restrict coverage to the transportation of the tenants of the particular premises specified in the policy.

Thus the interpretation of the policy becomes the problem of the court.

The policy is a written contract. It bespeaks the mental concurrence of the parties and it is their meaning expressed in this contract that is sought. We do not undertake judicial mind reading. Our task is judicial construction. It is not a query of silent intention but of expressed meaning. We do not proceed blindly or sleuth-like search for a clue. Certain established rules of construction guide us and the manifest object of the insurance furnishes a cue.

Contracting parties are presumed to intend that meaning which common understanding gives the language they select or adopt and if that language is ambiguous the author suffers the disadvantage

and assumes the less favorable interpretation. (*Bakker* v. *Ætna Life Insurance Co.*, 148 Misc. 162; *Floyd* v. *Consolidated Indemnity Insurance Co.*, 237 App. Div. 190; *Tulchinsky* v. *Public Service Mutual Casualty Insurance Corp.*, 245 App. Div. 382.)

Where does the restrictive indorsement expressly exclude the tenants of any other premises? It does not even limit the application of the insurance to the tenants of these particular specified premises.

The contract confines the use of the bus to the transportation of a certain class of passengers and a limited trip, that is to say, the carriage of tenants residing in a particular locality to a designated subway in that vicinity. Such use contrasts with the service of a common carrier. Here, then, we have a contract which employs' generic words and does not speak any specific terms and these words are broad enough to include the injured passengers within the group covered.

This understanding finds reinforcement in the fact that the express negative clauses of the contract likewise employ indefinite designation, for they simply exclude the use of the bus for the transportation of persons other than tenants (not the tenants or tenants of any particular premises).

Thus it is apparent that what these clauses and provisions primarily aim at is to restrict the bus to a specific use and not to specific passengers. The plaintiff cannot claim oversight. It authored and composed these clauses. It had the subject in mind. Here was the occasion and the obligation to specifically and definitely limit the insurance to the transportation of the tenants of the designated premises and none other. But why any doubt? This plaintiff, in compliance with the law, had filed certain information and schedules with the Superintendent of Insurance (Insurance Law, § 67-a, subd. 2; Vehicle and Traffic Law, § 17).

" (1) The basic rate for buses of over 30 passengers capacity in territory (1) comprising Greater New York for bodily injury was $827.00 per year and for property damage insurance was $233.00 per year. These rates were for statutory limits.

" (2) The bus used solely for the transportation of tenants and guests between an apartment house and the railroad station, subway station, etc., shall be written at 50% of the bus rate. The policy shall exclude coverage for all other passenger carrying use. The basic rate for this type of bus, apartment house bus, was $413.50 for bodily injury and $116.50 for property damage." (See plaintiff's Exhibit 3, ¶¶ 1 and 2.) And pursuant thereto the plaintiff issued its policy.

One notes that the use and seating capacity are the determining factors. This is in harmony with the basis for indemnity policy adopted by the statute (Insurance Law, § 109).

I am reminded that this defendant had no option about insurance. Before it could use the bus for the transportation of passengers it had to obtain and file the policy of insurance with the Commissioner of Motor Vehicles. (Vehicle and Traffic Law, § 17.)

We find that at all times it is the use that rules the conduct of the insurance liability business. Should this court now adopt a different basis for its ruling? Insurance rates are generally determined by the use. Cars used for private purposes fall in one group; cars used for commercial purposes are placed in another group; cars used for the transportation of some merchandise or materials are classified differently from cars used to convey more or less hazardous freight.

And then again in one sense both parties were on a par. Each of them necessarily sought to comply with the statute. Their conduct was meant to spell obedience to the law and the contract was intended in fulfillment of such duty. Consequently the object of the law becomes the object of the contract and the fulfillment of that object becomes the aim of judicial construction. The construction here rendered attempts that end.

Unless the bus was used for a purpose in violation of that described and intended, the plaintiff had no cause of action. Here there was no change in the use of the bus from the territory that the bus covered. Both the use and the route were within the policy and the accident sustained was covered by the insurance.

Complaint dismissed.